# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ROBIN LYNN JONES,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:09-00047 |
| v. | ) Judge Nixon / Knowles |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be AFFIRMED.

---

[1] The style of the case refers to Plaintiff as Robin Lynn Jones, but Plaintiff's counsel, in the body of her supporting Memorandum, refers to Plaintiff as Robin Christopher Jones. *See* Docket No. 16, p. 2. This discrepancy, however, is immaterial to the merits of the case.

## I. INTRODUCTION

Plaintiff protectively filed his applications for DIB and SSI on October 3, 2005, alleging that he had been disabled since July 26, 2005,[2] due to heart attacks, coronary artery disease associated with a six-level bypass procedure, hypertension, cholesterol, acid reflux, borderline intellectual functioning, depression, and a learning disability.[3] Docket No. 13, Attachment ("TR"), TR 82, 85-89, 93. Plaintiff's applications were denied both initially (TR 25, 78- 82) and upon reconsideration (TR 24, 70-75). Plaintiff subsequently requested (TR 67) and received (TR 41-45, 529-554) a hearing. Plaintiff's hearing was conducted on October 3, 2008, by Administrative Law Judge ("ALJ") Robert L. Erwin. TR 529. Plaintiff and vocational expert ("VE"), Dr. Ernest Brewer, appeared and testified. TR 529-554.

On November 28, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.[4] TR 11-23. Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2007.

---

[2] The parties' briefs, as well as Plaintiff's Application for Disability Insurance Benefits, list the onset disability date as July 26, 2005, while the Leads/Protective Filing Worksheet lists July 28, 2005 as the "onset date" for disability. This discrepancy is not material, however, to the merits of the case.

[3] No documents in the record contain a comprehensive list of Plaintiff's claimed ailments, but rather the list of ailments varies in different documents in the record, with most mentioning heart disease, acute myocardial infarction, and depression. TR 16, 24, 25, 72, 76, 82, 115, 159, Docket No. 16. Plaintiff's claimed ailments mostly stem from heart problems and a resulting six-vessel bypass surgery performed in July 2005. TR 218, 297.

[4] At one point during the decision, the ALJ accidentally refers to Plaintiff as "her." TR 17. Plaintiff is, however, consistently listed as Mr. Jones throughout the record. The ALJ's misstatement is harmless and not material to the issues before the Court.

2. The claimant has not engaged in substantial gainful activity since July 26, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease with six-vessel bypass procedure; borderline intellectual functioning; and learning disability (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to no climbing of ropes, ladders, and scaffolds and to no more than occasional climbing of ramps and stairs. He requires a sit/stand option as necessary for comfort. The claimant has no more than mild to moderate mental limitations and is limited to simple, one and two step procedures but could still have problems with learning and sustaining activities that require assessment, problem solving, written communication, and anything more than elementary calculations.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born January 10, 1964 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20

>              CFR 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 416.969, and 416.969a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 26, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 16-22.

On December 16, 2008, Plaintiff timely filed a request for review of the hearing decision. TR 9-10. On March 27, 2009, the Appeals Council issued a letter declining to review the case (TR 3-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to

support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson*, 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[5] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition

---

[5] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

> that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred by: (1) rejecting the opinion of Plaintiff's treating physician, Dr. Gamal Eskander; and by (2) discounting Plaintiff's subjective complaints of pain. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

## 1. Weight Accorded to the Opinion of Treating Physician, Dr. Eskander

Plaintiff first argues that the ALJ erroneously rejected the opinion of his treating physician, Dr. Gamal Eskander. Docket No. 16. Specifically, Plaintiff alleges that the ALJ rejected Dr. Eskander's opinion because Dr. Eskander was "not a cardiac specialist but a long time family physician who 'appear[ed] to be accommodating the claimant's continued allegations

8

of disability.'" *Id., quoting* TR 18. Plaintiff argues that there is nothing in the record that would support the ALJ's "assumption" that Dr. Eskander was "accommodating" Plaintiff's allegations of disability. *Id.*

Defendant responds that the ALJ properly accorded Dr. Eskander's opinion reduced weight, as Dr. Eskander's opinion contradicted other medical evidence in the record, including his own treatment notes. Docket No. 17. Defendant further responds that Plaintiff's contention that the ALJ discounted Dr. Eskander's opinion only because Dr. Eskander seemed to be "accommodating" Plaintiff, was incorrect, as the ALJ actually rejected Dr. Eskander's medical evaluation because it was not supported by objective evidence from the record. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Eskander treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's giving greater weight to his opinion than to other opinions if his opinion was consistent with, and supported by, the objective evidence of record. 20 C.F.R. § 404.1527(d)(2). As has been noted by the ALJ, however, Dr. Eskander's opinion contradicts other substantial objective evidence in the record. TR 18.

The ALJ compared Dr. Eskander's September 19, 2008 Medical Source Statement of Ability to do Work-Related Activities opinion (TR 190-193), with medical opinions from evaluations from Drs. Fisher (TR 392-396), Stout (TR 285-292), Case (TR 378-379) and Durbin (197-200). TR 18-21. Referencing an April 19, 2006 examination conducted by examining and

consultative physician Dr. Fisher, a March 2, 2006 letter from treating physician Dr. Case, and January 22, 2008 treatment notes from treating physician Dr. Durbin, the ALJ stated:

> [Dr. Fisher] observed that [Plaintiff's] physical examination showed no indication of any myocardial damage from the claimant's previous myocardial infarction(s). Additionally, treating cardiologist Dr. Case was of the opinion that the claimant was not disabled from a cardiac standpoint and encouraged him in March 2006 to begin a regular walking program and to maintain exercise on a weekly, five-day basis. Likewise, treating physician Dr. Durbin opined that the claimant had a normal physical examination and found no reason that he should be found disabled.

TR 18. (Internal citations omitted.)

After discussing the evidence of record, the ALJ found that Dr. Eskander's opinion was "completely contrary to the objective medical evidence of record and to the opinions of claimant's other treating sources that were of the opinion that the claimant was not physically or mentally disabled from work activity." *Id.* Moreover, contrary to Plaintiff's assertions that the ALJ only rejected Dr. Eskander's opinion because of an "assumption" that Dr. Eskander was "accommodating" Plaintiff's allegations of disability, the ALJ explicitly explained: "Less weight is given the opinion of Dr. Eskander due to the fact that his opinion is not supported by lab studies or radiographic tests." *Id.*

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of treating physicians are

11

inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). Because Dr. Eskander's opinion contradicted the evidence of record, the Regulations do not mandate that the ALJ accord his opinion controlling weight. Accordingly, Plaintiff's argument fails.

## 2. Credibility and Subjective Complaints of Pain

Plaintiff next contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his complaints of pain. Docket No. 16.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary*, 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ found Plaintiff's complaints of pain were not fully credible. TR 20. In making this determination, the ALJ explained:

> While the claimant continued to report to his physicians that he had completely ceased smoking, a follow-up visit with cardiac surgeon Dr. Case showed that he believed that the claimant was continuing to smoke. The claimant cares for personal needs; walks a long hill daily to visit his mother; takes out the garbage; grocery shops; spends time outside watching the birds; cares for pets; performs household chores; performs some yard work; and drives his car almost daily to visit with his son and his girlfriend. The consultative examiner opined that the claimant's daily functioning skills were for the most part intact as he had the basic capability to learn and to remember. The claimant declared that he plays video games with his son but cannot participate in active sports. The undersigned notes that such an ability to learn to play video games shows that he can basically learn and remember. His ability to perform such a variety of daily activities tends to negate the credibility of his subjective complaints, especially the degree of pain he maintained he experiences. One would not reasonably

> anticipate that a person who experiences substantial drowsiness
> and side effects from medications, the degree of pain alleged, or
> severe depression and anxiety, to be able to tolerate the physical
> demands, the level of concentration, or the amount of social
> interaction, necessary to perform many of these activities.

TR 20-21.

The ALJ also found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they are inconsistent with Plaintiff's residual functional capacity assessment. TR 21.

The ALJ's decision specifically addresses in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 14-23. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler,*

742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective and testimonial evidence, the ALJ determined that Plaintiff's allegations regarding his pain and limitations were not fully credible. TR 20-21. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge