**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION**

| | |
|---|---|
| ROBIN LYNN JONES, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 2:09-cv-00047 |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Knowles |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| *Defendant*. ) | |

# ORDER

Pending before the Court is Plaintiff Robin Lynn Jones' ("Plaintiff") Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 15) with supporting Memorandum (Doc. No. 16). Michael Astrue, Commissioner of Social Security ("Defendant" or "Commissioner") filed a Response in Opposition. (Doc. No. 17.) Magistrate Judge Knowles issued a Report and Recommendation ("Report") (Doc. No. 19) that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. Plaintiff filed an Objection to the Report (Doc. No. 20), to which Defendant filed a Response (Doc. No. 21).

Also pending is Plaintiff's Motion to Ascertain Status. (Doc. No. 18.) In light of the Court's decision, Plaintiff's Motion to Ascertain Status is **TERMINATED as moot**. Upon review of the Report, and for the reasons stated below, the Court **DENIES** Plaintiff's Motion and **ADOPTS** the Report in its entirety.

1

**I.     BACKGROUND**

   *A. Procedural Background*

   On October 3, 2005, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), claiming he had been disabled since July 26, 2005, as a result of heart attacks, a six-vessel bypass procedure, borderline intellectual functioning, and depression, among other claims.  (Doc. No. 19 at 2.)  The Social Security Administration ("SSA") denied Plaintiff's applications initially (Tr. 78-82) and again upon reconsideration (Tr. 70-75).  Plaintiff filed a written request for a hearing (Tr. 67), which the SSA granted (Tr. 62-63).  Administrative Law Judge ("ALJ") Robert L. Erwin conducted the hearing on October 3, 2008.  (Tr. 529-54.)  On November 28, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Jones was not disabled under the meaning of the Social Security Act.  (Tr. 11-23.) Specifically, the ALJ made the following findings of fact:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since July 26, 2005, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: coronary artery disease with six-vessel bypass procedure; borderline intellectual functioning; and learning disability (20 C.F.R. § 404.1521 *et seq.*, and 416.921 *et seq.*).

4. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except the claimant is limited to no climbing of ropes, ladders, and scaffolds and to no more than occasional climbing of ramps and stairs.  He requires a sit/stand option as necessary for comfort.  The claimant has no more than mild to moderate mental limitations and is limited to simple, one and two step procedures but could still have problems with learning and sustaining activities that require assessment, problem solving, written communication, and anything more

than elementary calculations.

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565, 416.965).

7. The claimant was born January 10, 1964 and was 41 years old, which is defined as younger individual age 18-49 on the alleged disability onset date (20 C.F.R. §§ 404.1564, 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564, 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. §§ 404.1568, 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 416.969, 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 26, 2005 through the date of this decision (20 C.F.R. §§ 404.1520(g), 416.920(g)).

(Tr. 16-22.)

On December 16, 2008, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 9-10.) The Appeals Council adopted the ALJ's decision on March 27, 2009, thereby rendering that decision the final decision of the Commissioner. (Tr. 3-5.) On May 7, 2009, Plaintiff filed this action for judicial review of the Commissioner's final decision. (Doc. No. 1.) The Court has jurisdiction under 42 U.S.C. § 405(g). On July 15, 2009, Plaintiff filed the Motion (Doc. No. 15) and a Memorandum in Support of the Motion (Doc. No. 16). Defendant filed a Response to the Motion on August 12, 2009. (Doc. No. 17.) On February 22, 2011, Magistrate Judge Knowles issued his Report, recommending Plaintiff's Motion be denied. (Doc. No. 19.)

Plaintiff asserts two objections to the Report. (Doc. No. 20.) Specifically, Plaintiff objects to the Magistrate's recommended findings that:

1. The ALJ gave proper weight to the opinion of Dr. Gamal Eskander.

2. The ALJ properly rejected Mr. Jones' complaints of shortness of breath and fatigue.

(Doc. No. 20 at 1-2.) Defendant filed a Response to Plaintiff's objections on March 16, 2011. (Doc. No. 21.)

*B. Factual Background*

**1. Plaintiff's General History**

Plaintiff was born on January 10, 1964 (Tr. 85) and graduated from high school in 1984 (Tr. 201) after having taken remedial classes in the eighth grade and after having had to retake English, which he failed in the ninth grade. (Tr. 181). Plaintiff filed for DIB and SSI benefits on October 3, 2005, claiming he had been disabled since July 26, 2005, when he had begun to experience intermittent chest pain. (Tr. 85-89.) He checked into Cookeville Regional Medical Center the following day, and underwent a six-vessel bypass procedure after being diagnosed with coronary artery disease. (Tr. 304, 306.) Before that time, Plaintiff had been in "excellent health" (Tr. 303), having worked a number of jobs involving varying degrees of physical labor, such as cleaning and repairing auto parts, moving and stacking lumber, and running plastic-injection machines. (Tr. 95.) Plaintiff reported that he had not worked since December 31, 2004. (Tr. 159.)

**2. Plaintiff's Medical History**

After his bypass surgery, Plaintiff had a follow-up appointment on August 22, 2005 with Dr. R. Alex Case, M.D., his cardiologist, who diagnosed Plaintiff with stable angina pectoris, finding he had an ejection fraction of fifty percent. (Tr. 322-23.) Dr. Case also noted that Plaintiff was continuing to smoke, and cautioned him to quit. (*Id.*) On September 19, 2005, Plaintiff first visited Dr. Gamal Eskander, M.D. (Tr. 374.) Dr. Eskander noted that Plaintiff had

quit smoking and that his lungs were clear. (*Id.*) On March 2, 2006, Plaintiff had another follow-up appointment with Dr. Case, who noted that Plaintiff had remained "fairly sedentary" but had not smoked since their last meeting. (Tr. 320-21.) Acknowledging that Plaintiff had applied for social security disability benefits, Dr. Case opined that Plaintiff did not qualify for disability from a cardiac standpoint and encouraged him to begin to exercise five days a week. (*Id.*) On April 19, 2006, as a part of the SSA's evaluation process, Plaintiff saw consulting physician Timothy Fisher, D.O., for an examination. (Tr. 392-396.) Plaintiff complained of shortness of breath to Dr. Fisher, but Dr. Fisher said that without knowing Plaintiff's ejection fraction he could not make an assessment of his ability to work. (*Id.*) On May 25, 2006, Plaintiff saw Dr. Eskander again and complained of depression. (Tr. 234.) Dr. Eskander referred Plaintiff for psychological counseling. (*Id.*) Plaintiff returned to Dr. Eskander on July 31, 2006, complaining of pain when he took a deep breath. (Tr. 235.) At that time, however, Plaintiff denied experiencing shortness of breath, although Dr. Eskander commented that Plaintiff "is a very poor historian." (*Id.*) The doctor believed the pain was likely caused by pleurisy. (*Id.*) His examination found Plaintiff's lungs to be clear. (*Id.*)

As a part of the SSA's disability determination, Plaintiff visited the office of psychologist Mark Loftis, M.A., where he underwent a consultative examination on August 21, 2006. (Tr. 201-204.) Plaintiff reported that he visited with his son and his son's mother on an almost daily basis. (*Id.*) Mr. Loftis found Plaintiff to be in the average range of intellectual function, stating that he believed Plaintiff had mild to moderate functional limitations. (*Id.*)

Plaintiff visited Dr. Eskander again on August 24, 2006, complaining of Bell's Palsy, which he had a history of, because he could not close his left eye and his mouth was drawing to the right side. (Tr. 236.) Dr. Eskander prescribed prednisone and eye drops. (*Id.*) Because

5

Plaintiff had no insurance, he was reluctant to see Dr. Case again, and instead went to the Walk-In Clinic of Sparta on February 7, 2007, complaining of chronic fatigue that was worsening over time. (Tr. 238.) His lungs were clear, and the clinic noted that he was possibly overmedicated for his hypertension. (*Id.*)

On April 24, 2007, Plaintiff checked into White County Community Hospital complaining of tightness in his chest radiating to his left upper back. (Tr. 242.) He was transferred the same day to Cookeville Regional Medical Center, where Dr. Bunker Stout, M.D., assessed the Plaintiff and ordered a stress nuclear study. (285-88.) The stress nuclear study showed Plaintiff was negative for myocardial ischemia and showed a computer-derived ejection fraction of seventy percent. (Tr. 291.)

Plaintiff visited The Walk-In Clinic of Sparta again on January 22, 2008 complaining of fatigue. (Tr. 227.) His examiner, Wayne Durbin, PA-C,[1] noted that Plaintiff was seeking disability and wrote, "I did not find any reason for this patient to be considered disabled." (*Id.*) A week later, Plaintiff visited Dr. Eskander again for a follow up. (Tr. 362.) Dr. Eskander wrote that Plaintiff's lungs were clear and that he believed an old rib fracture was causing Plaintiff's chest pain. (*Id.*)

### 3. Assessments of Plaintiff

On May 15, 2008, Psychologist Horace Edwards, Ph.D., examined Plaintiff's files to make a psychiatric review and to issue a Mental Residual Functional Capacity Assessment. (Tr. 263-280.) Dr. Edwards found Plaintiff to have mild to moderate limitations in his social and mental functions and in his ability to participate in daily activities. (*Id.*) It was Dr. Eskander's

---

[1] Both the ALJ and Plaintiff mistakenly refer to Wayne Durbin, PA-C, as "Dr. Durbin," although he is a Physician's Assistant-Certified and not a doctor. The discrepancy is immaterial.

opinion that Plaintiff could understand simple and detailed tasks, could sustain concentration in spite of his depression and anxiety, could interact adequately with coworkers and supervisors, could respond and adapt to infrequent change, and could set independent goals. (Tr. 289.)

Dr. Eskander completed a Statement of Ability to Do Work-Related Activities for Plaintiff on September 19, 2008. (Tr. 190-93.) It was his assessment that Plaintiff could lift less than ten pounds, stand or walk for less than two hours in an eight-hour workday, sit for only four hours in an eight-hour workday, and that Plaintiff's ability to push and pull was limited in both his upper and lower extremities. (*Id.*) Dr. Eskander wrote that because of weakness and pain following Plaintiff's heart surgery, Plaintiff was unable to concentrate due to pain, was incapable of tolerating the stress of even "low stress jobs," would have to take breaks every thirty minutes during a workday, and would be likely to be absent from work more than four times a month. (*Id.*) Dr. Eskander stated that Plaintiff would be unable to climb, balance, kneel, crouch, or crawl due to his pain and shortness of breath, and that his ability to reach, manipulate, and feel would be limited on occasion due to chest pain and shortness of breath. (*Id.*) The doctor was of the opinion that Plaintiff's ability to speak, hear, and see were unlimited, but that Plaintiff's heart condition required that he avoid even moderate exposure to extreme heat and cold, noise, dust, vibration, humidity, hazards, fumes and odors, solvents, smoke, and chemicals. (*Id.*)

Jerell Killiam, M.S., a senior psychological examiner, gave Plaintiff a psychological evaluation on September 24, 2008, determining that Plaintiff was on the borderline range of intellectual functioning. (Tr. 171-73.) Mr. Killiam's opinion was that while Plaintiff would not have difficulty with simple one- and two-step procedures, he could have problems with learning and sustaining activities involving assessment, problem solving, written communication, and anything more than elementary calculations. (*Id.*)

7

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). However, review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to

the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

#### A. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ gave proper weight to the opinion of Dr. Eskander.*

Plaintiff objects to the ALJ's reliance on the reports of Dr. Fisher and Wayne Durbin, PA-C, in his finding that Dr. Eskander's opinion was contradicted by other treating sources. (Doc. No. 20 at 1.) Plaintiff also objects to the ALJ's finding that the objective medical evidence in the record contradicts Dr. Eskander's opinion, pointing out that Plaintiff consistently complained to Dr. Eskander of shortness of breath and that chest x-rays following his surgery showed trace pleural effusion in his left lung. (Doc. No. 20 at 1-2.)

A "treating source" is one who has provided the claimant with medical treatment or evaluation and who has had an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902. Generally, the opinions of treating physicians are entitled to greater weight than the opinions of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). If the opinion of the treating physician as to the nature and severity of the claimant's conditions is supported by accepted clinical and laboratory diagnostic tests and is not inconsistent with other substantial evidence from the record, it will have controlling weight. *Rogers*, 378 F.3d at 242. In determining the weight of the treating physician's opinion, the ALJ must consider "a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician;

9

and any other relevant factors." *Id.* When discounting the opinion of the treating physician, the ALJ must provide "good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). The less consistent an opinion is with the record, the less weight it will be given. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Deciding what weight to give to competing evidence, such as contradicting opinions by multiple treating physicians, is an administrative finding for which the final authority resides with the Commissioner. *See* 20 C.F.R. § 416.927(e); *Walker v. Sec'y Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). If this finding is supported by substantial evidence, even if there is substantial contradictory evidence, the Commissioner's finding will be affirmed. *See Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)).

The Magistrate Judge found that Dr. Eskander was a treating physician because he treated Plaintiff over an extended period, but found that the ALJ was justified in giving Dr. Eskander's opinion less weight because there was substantial contradictory evidence in the record. (Doc. No. 19 at 10.) The Magistrate Judge's Report noted that Dr. Eskander's opinion was inconsistent with the reports of Dr. Fisher, Dr. Stout, Dr. Case, and Wayne Durbin, PA-C. (*Id.*) Plaintiff objects to the ALJ's use of Dr. Fisher and Mr. Durbin's opinions to contradict the opinion of a treating physician. (Doc. No. 20 at 1.) Plaintiff argues that Dr. Fisher was only a consulting physician and did not make a work assessment, and that Mr. Durbin only saw the Plaintiff at a walk-in clinic, and, presumably, is therefore a non-treating source. (*Id.*)

Plaintiff is correct that Dr. Fisher gave no opinion as to Plaintiff's ability to work. While

10

Dr. Fisher did say that his assessment would be "dependent on [Plaintiff's] left ventricular ejection fraction," he said he could not form an opinion as to whether Plaintiff was disabled without knowing his ejection fraction. (Tr. 396.) Dr. Stout, another of Plaintiff's non-treating physicians, later performed a stress test that showed a seventy percent ejection fraction. (Tr. 291.) Alhough the ALJ states that a low ejection fraction would support Plaintiff's assertions of disability, none of Plaintiff's treating or consulting physicians gave an opinion as to how this particular test reflected Plaintiff's ability to work. (Tr. 18.) The Court finds that there is not a substantial basis for the ALJ's finding that the ejection fraction contradicted the opinion of Plaintiff's treating physician.

Even though this particular finding by the ALJ is not supported by substantial evidence, the Court finds that there is still substantial evidence in the record to justify giving Dr. Eskander's opinion less weight because it is contradicted by the opinions of two of Plaintiff's other treating sources. *See* 20 C.F.R. § 416.927(e). Although Plaintiff contends that Mr. Durbin only saw Plaintiff "briefly at a Walk In Clinic" (Doc. No. 20 at 1), Plaintiff visited Mr. Durbin at the walk-in clinic on several occasions over the period from February 7, 2007 through January 22, 2008, during which time Mr. Durbin consulted with Plaintiff and ordered diagnostic tests. (*See* Tr. 197-99, 227-32, 238.) Additionally, Plaintiff was treated on several occasions by Dr. Case, his cardiologist, whose opinion was that Plaintiff was not disabled from a cardiac standpoint. (Tr. 321.) Both Dr. Case and Mr. Durbin had a close enough treatment relationship with the Plaintiff to support the Commissioner's finding that they are "treating sources" under 20 C.F.R. § 404.1502. Therefore, their opinions provide substantial evidence for the Commissioner's finding that Dr. Eskander's opinion is contradicted by the record and is entitled to less weight. *See Walker*, 980 F.2d at 1070.

The Magistrate Judge's Report emphasized that Dr. Eskander's opinion was not supported by lab studies or radiographic tests, which is further justification for the ALJ's decision to give the doctor's opinion less weight. (Doc. No. 19 at 11.) In his Objection to the Report, Plaintiff cites a chest x-ray taken August 30, 2005 (Tr. 295), which showed trace pleural effusion in Plaintiff's left lung. (Doc. No. 20 at 2.) The Court assumes Plaintiff is arguing that this is a radiographic test supporting Dr. Eskander's opinion. However, Plaintiff does not show, nor does the record, that Dr. Eskander relied on the chest x-ray in forming his opinion that plaintiff was disabled due to shortness of breath. Furthermore, while this particular x-ray—taken within days of Plaintiff's heart surgery—shows some pleural effusion, the other examinations in the record show Plaintiff's lungs as "clear" in the years following his operation. (*See* Tr. 233, 235, 236, 238, 286, 362, 371-74, 378, 404, 405, 409, 428.) Even if Dr. Eskander had relied on the x-ray showing pleural effusion in forming his opinion, the Court finds that his opinion is still contradicted by substantial evidence in the record, and that the Commissioner is justified in according it less weight. *See Hogg*, 987 F.2d at 331.

Plaintiff also argues that he was consistent in his complaints of shortness of breath to Dr. Eskander. (Doc. No. 20 at 1.) The Court assumes the purpose of this argument is to provide further evidence supporting Dr. Eskander's opinion or to deny that the medical evidence contradicts Plaintiff's shortness of breath complaints, specifically. The Court finds that Plaintiff was not consistent in his complaints. During his visit to Dr. Eskander on July 31, 2006, for instance, Plaintiff denied having experienced shortness of breath.[2] (Tr. 235.) Even if Plaintiff's complaints to Dr. Eskander had been consistent, the opinions of two of his treating physicians

---

[2] While Dr. Eskander's notes show Plaintiff denied having shortness of breath, the doctor also noted that the "[patient] is a very poor historian." (Tr. 235.)

12

and the doctors' examinations of Plaintiff's lungs contradict his complaints. When the evidence is conflicting, it is within the ALJ's purview to decide what weight is given to competing evidence. *See Walker*, 980 F.2d at 1070. Even if there is substantial evidence supporting Plaintiff's claims, so long as there is substantial evidence contradicting those complaints the ALJ is justified in giving them less weight. *See Hogg*, 987 F.2d at 331. Because the ALJ's findings were supported by substantial evidence, the Court finds that the ALJ gave proper weight to Dr. Eskander's opinion.

### B. *Plaintiff objects to the Magistrate Judge's recommendation that the ALJ properly rejected Mr. Jones' complaints of shortness of breath and fatigue*.

At his hearing before the ALJ on October 3, 2008, Plaintiff testified that he experiences pain and swelling in his foot and that he suffers from shortness of breath and a lack of energy, all of which hinder his mobility, his ability to lift more than ten pounds, and his fitness for other physical tasks. (Tr. 538-540, 546-549.) Plaintiff argues that it was an error for the ALJ to reject his subjective complaints because they are consistent with the reports he has given to his doctors over time and are not contradicted by the medical evidence. (Doc. No. 20 at 2.)

Pain can only be considered disabling if there is objective medical proof of the alleged pain or of a condition severe enough that it could reasonably be expected to cause the alleged disabling pain. *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). A claimant's allegations of disabling pain may not be rejected on the medical evidence alone, but rather the Commissioner must consider all relevant evidence, including the claimant's daily activities, the claimant's statements of symptoms, and evidence from treating or consulting physicians. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994) (quoting 20 C.F.R.

13

§ 404.1529). In so doing, the ALJ may look to household and social activities in which the claimant engaged. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (citing *Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)). Even when the objective medical evidence supports the claimant's subjective complaints, an ALJ is not required to credit those complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). An ALJ's findings on the claimant's credibility are entitled to deference because the ALJ "is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531; *see also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). If the ALJ rejects the claimant's testimony regarding pain, the ALJ must clearly state the reasons for doing so. *Felisky*, 35 F.3d at 1036.

There is substantial evidence for the Commissioner's finding that Plaintiff is not disabled due to pain or shortness of breath, despite Plaintiff's claim that his subjective complaints are supported by the record. In Plaintiff's objection to the Magistrate's Report, he recites his subjective complaints from the hearing, pointing out that he testified to his inability to walk for more than short distances or to lift more than ten or fifteen pounds, recounted that he drove no more than twice a month and had given up many daily activities, and detailed his lack of energy and his foot pain. (Doc. No. 20 at 2.) Plaintiff argues that these complaints are consistent with the complaints he made to his doctors. (*Id.*) Despite support in the record for Plaintiff's complaints of shortness of breath and fatigue as a result of his surgery, he testified in his hearing before the ALJ that he goes grocery shopping, takes his garbage to the dump, waters the garden, walks up a hill each day to visit his mother, and cares for his pets.[3] (Tr. 540-48.) Plaintiff also reported to Mr. Loftis that he visits his son and girlfriend almost daily and that he plays

---

[3] Plaintiff also details these activities in his Function Reports. (Tr. 123-58.)

videogames with his son regularly. (Tr. 202.) The ALJ cites these activities, as well as Plaintiff's smoking, in his decision that Plaintiff's subjective complaints lacked credibility:

> The degree of the claimant's complaints of pain is not considered fully credible. While the claimant continued to report to his physicians that he had completely ceased smoking, a follow up visit with cardiac surgeon Dr. Case showed that he believed that the claimant was continuing to smoke. The claimant cares for personal needs; walks a long hill daily to visit his mother; takes out the garbage; grocery shops; spends time outside watching the birds; cares for pets; performs household chores; performs some yard work; and drives his car almost daily to visit with his son and his girlfriend . . . . His ability to perform such a variety of daily activities tends to negate the credibility of his subjective complaints, especially the degree of pain he maintained he experiences.

(Tr. 20-21.)

The Magistrate Judge's Report found that the ALJ addressed Plaintiff's testimony and his subjective claims in great detail and chose to rely on medical findings that were inconsistent with Plaintiff's subjective complaints of pain. (Doc. No. 19 at 14.) The Magistrate Judge noted, however, that it is "within the ALJ's province" to do so. (*Id.*) The Court agrees. Even when there is objective medical evidence supporting the Plaintiff's complaints, the ALJ is not obliged to heed them. *See Jones*, 336 F.3d at 476. The ALJ's finding that the Plaintiff's daily activities undermine the credibility of his subjective complaints of pain is supported by substantial evidence, specifically, by Plaintiff's testimony and the reports detailing his regular activities.

The ALJ's findings regarding Plaintiff's activities are not without error. His assessment of Plaintiff's representations to his doctors regarding his smoking habit is questionable. Dr. Case's observation that Plaintiff was still smoking was made three weeks after his discharge from the hospital following his bypass surgery. (Tr. 322-23.) The record does not reflect that Dr. Case, or any other of Plaintiff's doctors, questioned whether Plaintiff had actually quit

smoking after that follow-up visit.[4] In addition, the record does not directly support the ALJ's finding that Plaintiff drove on a daily basis. In the hearing, Plaintiff reported to the ALJ that he drove once or twice a month. (Tr. 536.) The ALJ's finding that Plaintiff drove to visit his son and girlfriend almost daily seems to be based on Plaintiff's examination by Mr. Loftis, on August 21, 2006, who reported, "[He] visits his son and his son's mother on an almost daily basis." (Tr. 202.) It is unclear, however, whether Plaintiff was continuing these visits with the same frequency at the time of his hearing or whether it was he, or someone else, who drove for these regular visits with his son and his girlfriend.[5]

Despite these errors, the ALJ articulated that the multiplicity of activities in which Plaintiff was able to engage was determinative in his assessment of Plaintiff's credibility. (Tr. 21.) Even without the findings on Plaintiff's smoking and driving habits, there is still substantial evidence to support the ALJ's judgment that Plaintiff's pain—including Plaintiff's shortness of breath, foot discomfort, and fatigue—was not disabling, as evidenced by his ability to participate in various daily household activities.

This Court must accord deference to the ALJ's assessment of Plaintiff's credibility. *See*

---

[4] Plaintiff was discharged from the hospital with orders to discontinue smoking on August 1, 2005. (Tr. 411.) In a follow-up visit on August 22, Dr. Case noted, "Unfortunately, [Plaintiff] continues to smoke tobacco . . . . I have counseled this gentleman regarding smoking cessation in detail. He appears reasonably motivated to comply." (Tr. 322.) A week later, Dr. Wilson, another cardiac specialist at Cookeville Regional, noted, "Patient has quit smoking!" (Tr. 409.) The next and final time Plaintiff visited with Dr. Case, on March 2, 2006, the doctor indicated that Plaintiff had quit smoking following his surgery: "[Plaintiff] has not smoked since July of last year." (Tr. 320.) This is also reflected in the reports of Plaintiff's other physicians, none of whom questioned whether Plaintiff had actually quit smoking. (Tr. 202, 218, 374, 393.)

[5] Plaintiff reported in his Function Report of March 6, 2008 that he leaves his home approximately twice a week, and that when he does so his form of transport is a car. (Tr. 141.) However, he testified in his hearing that his girlfriend drives him when he goes shopping. (Tr. 541.) On the other hand, he told the ALJ that he takes the garbage to the dump, a drive of "maybe a mile," from which the ALJ may have inferred that Plaintiff drives more frequently than he had earlier testified. (Tr. 541.)

*Walters*, 127 F.3d at 531.  Although there is evidence supporting Plaintiff's claims, it is within the ALJ's discretion to rely on evidence that contradicts those claims.  *See Jones*, 336 F.3d at 476.  The ALJ has clearly stated his reasons for discounting Plaintiff's claims of disabling pain.  Specifically, Plaintiff participates in a variety of activities in which he would not be able to engage were his pain as severe as alleged.  (Tr. 21.)  As such, the ALJ's findings will not be disturbed on this point.

**IV.    CONCLUSION**

For the reasons stated above, Plaintiff's Motion is **DENIED** and the Court **ADOPTS** the Magistrate Judge's Report in its entirety.  The decision of the Commissioner is **AFFIRMED**.

It is so ORDERED.

Entered this the ___20th_____ day of June, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT